## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Theresa Meza, being duly sworn, depose, and state the following:

## AGENT BACKGROUND AND INTRODUCTION

1.    I have been employed as a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since September 2004. I am currently assigned to ATF Shreveport Field Division and serve as the Resident Agent in Charge of that office. My duties and responsibilities include the investigation of violations of federal laws related to the criminal misuse of firearms, firearms trafficking, violent crimes, including armed robberies, possession of firearms in furtherance of violent crimes, and drug trafficking offenses. As a SA, I have completed a Federal Law Enforcement Training Program and a 14-week ATF Special Agent Basic Training Academy taught at the Federal Law Enforcement Training Center located in Glynco, Georgia. I have also received specialized training in the investigation of fire-related offenses, such as arson, and I currently serve as the primary federal point of contact for arson-related offenses in the State of Louisiana.

2.    As an ATF SA, I am a "federal law enforcement officer," as defined by Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure and am vested with the authority to investigate violations of federal law that include Title 18 of the United States Code.

3.    I make this Affidavit for the limited purpose of establishing probable cause for a criminal complaint charging **Anthony DILLON, JR.**, whose date of birth is March 7, 2007, and **James Dale SMITH IV**, whose date of birth is April 29, 2005, with violating the federal arson statute, Title 18, United States Code, Section 844(i), and/or having aided and abetted in the same, in violation of Title 18, United States Code, Section 2 (collectively, the "**TARGET OFFENSE**").

4.      The facts set forth in this Affidavit are based on my personal knowledge, review of records, documents, and other evidence obtained during this investigation, as well as information conveyed to me by other law enforcement officials and private persons. This Affidavit is submitted for the sole purpose of establishing probable cause that DILLON and SMITH committed the TARGET OFFENSE and does not include every fact known to me about this matter.

## PROBABLE CAUSE

### *St. John Catholic Church and the March 27 Fire That Destroyed It*

5.      St. John Chapel ("St. John") is a Catholic church located at 7900 U.S. Highway 165, Columbia, LA 71418, within the Western District of Louisiana. It is the only Catholic church in Caldwell Parish and is one of few Catholic churches in northeast Louisiana. The church has approximately 35-40 parishioners.

6.      As a church, St. John engages in interstate commercial transactions in many ways that permit it to operate and serve the parishioners in its parish and elsewhere. Specifically:

   a.  St. John maintains insurance for its building through an insurance company that is located outside the State of Louisiana;

   b.  St. John purchases its religious materials (e.g., wine, bread, candles) and general consumables (e.g., food, chairs, etc.) through out-of-state vendors;

   c.  St. John uses another church's social media page to make the public aware of its services and uses an email list and text message chains to do the same;

   d.  St. John, in conjunction with another church, leads a biannual trip to Rome;

   e.  St. John pools its money with another church and maintains those funds in bank accounts with an FDIC-insured bank;

2

f.  St. John uses the funds in its FDIC-insured accounts to make charitable expenditures several dozen times per year;

g.  St. John pays one-third of its priest's salary and for the priest's mileage on his personal vehicle, with the remainder of the priest's salary paid by a different church;

h.  St. John pays the Archdiocese of Alexandria on a regular basis to support the broader funding of the global Catholic Church; and

i.  St. John serves out-of-state persons in worship service on an as-needed basis, with those persons primarily coming during hunting season.

7.    On March 27, 2026, at approximately 6:18 a.m., the Caldwell Parish Sheriff's Office received a 911 call indicating that St. John was on fire. Sheriff's Deputies arrived to find a broken window with a baseball bat outside of it and the building ablaze. The following still-frames from body-worn camera depict a broken window that had a bat outside it and an open door with the blaze visible in the background:



3

8.      A fire team arrived, but was unable to save the building, with St. John's entire interior, including its sanctuary and administrative and common areas being ruined. The following photo depicts the sanctuary after the blaze:



*Investigation and Identification of DILLON and SMITH as the Perpetrators*

9.      Deputies responded to the fire scene and observed a broken window near the rear of the structure with a baseball bat located on the ground underneath the window. Deputies on scene also observed electronic cables located on the ground in an open doorway on the side of the church. Further scene examination revealed more electronic cables located on the ground behind the church. Based on the officers' training and experience, it appeared the items were taken from the church and were indicative of a burglary that had occurred.

4

10.    Members of the church arrived at the fire scene and advised investigators that several televisions—at least one large-screen television and two smaller televisions—and a sound mixer had apparently been taken from inside the church.

11.    As law enforcement investigated the scene, a Sheriff's Deputy saw a large television being loaded into the back of an SUV that was parked in a driveway adjacent to the church. Deputies approached the SUV and observed a male they identified as SMITH walking to the SUV carrying a box containing a black sound system mixer, with DILLON nearby and appearing to be working in conjunction with SMITH based on their being near the same vehicle and at the same residence at this time of day. DILLON and SMITH both reside in a home approximately 70 feet away from St. John.

12.    Church members were asked to look at the television loaded into the back of the SUV, and they indicated that the television and sound mixer were both taken from inside the church.

13.    A state search warrant was obtained for the residence located at 179 Eglin Street, which is the property where DILLON and SMITH reside and that is approximately 70 feet away from the church. Several televisions were recovered as evidence from the residence, including a television that was on the floor as though it had recently been placed in the residence and at least two that law enforcement believes to belong to the church. The residence was also found to contain lighter fluid and lighters.

14.    Later on March 27, law enforcement interviewed a witness who explained (a) that DILLON had sold her a television in the days before this church burglary with SMITH present, (b) that after the purchase, she advised DILLON in the days before the burglary that the television did not work and that he would need to return her money, (c) that DILLON had told her that he had secured a television for her using funds from his mother, which the mother later denied to this

witness, and (d) that DILLON called her that morning and told her he had a television. This witness then advised that she had told DILLON that she did not want a stolen television.

15. St. John's priest further advised in an interview with law enforcement that neighbors had been stealing electrical power by utilizing an extension cord from their trailer that was connected to the church shed the week prior to the fire. The church handyman disconnected the power to the shed to prevent this from occurring again in the days before the fire.

16. Law enforcement next pulled video surveillance from across the street from St. John, which showed two individuals whose appearance was generally consistent with SMITH and DILLON, though it was dark, near the entrance of the church at approximately 5:09 am.

17. Inspecting the scene of the fire, a canine unit trained to detect the scent of fire accelerants "indicated" or alerted near a burned-out wooden filing cabinet, which means that the dog detected the scent of a material that could have been used intentionally to initiate a fire or to increase the fire's rate of growth and spread. Based on my training and experience, I believe that the fire began in this administrative area and spread to the remainder of the church property.

18. After this statement was taken, both suspects were transported to the Caldwell Correctional Center to be booked on state criminal charges and remain detained there.

[Remainder of Page Intentionally Left Blank]

## CONCLUSION

19.    Based on the foregoing, I respectfully submit that there is probable cause to believe

that DILLON and SMITH committed the TARGET OFFENSE.


**FURTHER YOUR AFFIANT SAYETH NAUGHT.**


Theresa Meza, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives (ATF)


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by Zoom, on this 1st day of April, 2026.


HON. KAYLA D. MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

7